IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN KARLIN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| | : | NO. 20-3113 |
| | : | |
| ANDREW M. SAUL, | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

Christian Karlin ("Karlin" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying his claims for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act and for Supplemental Security Income ("SSI") pursuant to Title XVI of the Act.[1] For the reasons that follow, Karlin's Request for Review will be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Karlin was born on July 30, 1970. R. at 32.[2] He has a limited education and is able to communicate in English. Id. His past relevant work experience was as a sales representative, printing. Id. at 31. Karlin applied for DIB and SSI benefits on August 1, 2017, id. at 22, alleging that he became disabled on September 6, 2013 due to: back pain, shoulder pain, stress, anxiety, mental issues, memory problems, and comprehension problems. Id. at 71-72. His

---

[1]     In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 3, 4.

[2]     Citations to the administrative record will be indicated by "R." followed by the page number.

applications were initially denied on October 31, 2017. Id. at 22. Karlin then filed a written request for a hearing on November 27, 2017, id., and an Administrative Law Judge ("ALJ") held a hearing on his claims on November 27, 2018, id. at 38-70. On April 2, 2019, the ALJ issued an opinion denying Karlin's claims. Id. at 19-37. Karlin filed an appeal, which the Appeals Council denied on May 13, 2020, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 2-7. Karlin then commenced this action in federal court.

## II.     THE ALJ'S DECISION

In her decision, the ALJ found that Karlin suffered from the following severe impairments: chronic pain syndrome, degenerative disc disease of the spine, major depressive disorder, and generalized anxiety disorder. Id. at 25. The ALJ determined that neither Karlin's individual impairments, nor the combination of his impairments, met or medically equaled a listed impairment. Id. at 25-27. The ALJ found that, during the relevant period, Karlin had the residual functional capacity ("RFC") to perform:

> Sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant could lift, carry, push, and pull 10 pounds occasionally and 5 pounds frequently; and sit for 6 hours and stand and/or walk for 2 hours total in an 8-hour workday. The claimant would need to alternate positions every thirty minutes for five minutes at the workstation and he may occasionally need to elevate his legs under his desk when in the seated position. He could perform all postural activities occasionally, except he could never climb ladders, ropes, or scaffolds. He should avoid concentrated exposure to hazardous machinery, unprotected heights, and extreme temperatures. He is limited to unskilled work as defined in the Dictionary of Occupational Titles as specific vocational preparation levels 1 and 2, and he could not have more than occasional interaction with the general public, co-workers, and supervisors.

Id. at 27. Based on this RFC determination, and relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that there were jobs that existed in significant numbers in the national economy that Karlin could perform, such as addresser, document preparer, and

cutter and paster. Id. at 32-33. Accordingly, the ALJ concluded that Karlin was not disabled. Id. at 33.

## III. KARLIN'S REQUEST FOR REVIEW

In his Request for Review, Karlin contends that the ALJ failed to: (1) include the mental limitations she found credible in the RFC and hypothetical to the VE; and (2) properly evaluate and accommodate the physical impairments of record.

## IV. SOCIAL SECURITY STANDARD OF REVIEW

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter is to uphold any factual determination made by the ALJ that is supported by "substantial evidence." 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). The court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's finding of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001).

Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988)); Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). It is "more than a mere scintilla but may be somewhat less than a preponderance of the

3

evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 1382c(a)(3)(A); accord id. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920 (references to other regulations omitted).

## V. DISCUSSION

### A. The ALJ Adequately Addressed Karlin's Mental Limitations

Karlin argues that the ALJ erred by failing to account for his moderate mental limitations in both the RFC and hypothetical to the VE. Pl.'s Br. (Doc. No. 14) at 2-5. This claim lacks merit.

4

An individual's RFC refers to the most a claimant can still do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all the relevant evidence, including medical records, medical source opinions, and the individual's subjective allegations and descriptions of his or her own limitations. Id. §§ 404.1545(a)(3), 416.945(a)(3). In assessing a claimant's RFC, an ALJ must consider all of a claimant's medically determinable impairments, including impairments that are not severe. Id. §§ 404.1545, 416.945; Rutherford, 399 F.3d at 554. Likewise, when questioning a VE, an ALJ's hypothetical question must also accurately convey all "credibly established limitations." Rutherford, 399 F.3d at 544. "Limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response." Id. However, it is the ALJ's responsibility to determine a claimant's RFC. 20 C.F.R. §§ 404.1546, 416.946. As the United States Court of Appeals for the Third Circuit has articulated:

> The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."

Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (internal citations omitted) (quoting Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Thus, the ALJ's role is not merely to choose between the opinions of various medical sources. "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); see also Chandler, 667 F.3d at 362 (ALJ could extrapolate based on the evidence of record because every fact incorporated in

an RFC does not need to have been found by a medical expert).

Here, at step two of the sequential analysis, the ALJ identified the following severe impairments: chronic pain syndrome, degenerative disc disease of the spine, major depressive disorder, and generalized anxiety disorder. R. at 25. In determining that Karlin's mental impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments, the ALJ considered the four broad functional areas set out in the regulations regarding evaluating mental impairments and in Section 12.00C of the Listings of Impairments: understanding, remembering, or applying information; interacting with others; ability to concentrate, persist, or maintain pace; and ability to adapt and manage himself or herself. Id. at 25-27; see 20 C.F.R. pt. 404, subpt. P, app. 1. In particular, the ALJ found that Karlin had moderate limitations in each of these four areas. R. at 26. After carefully considering the record, the ALJ then determined that Karlin had a mental RFC to perform "unskilled work as defined in the Dictionary of Occupational Titles as specific vocational preparation levels 1 and 2, and he could not have more than occasional interaction with the general public, co-workers, and supervisors." Id. at 27. The ALJ also included these restrictions in his hypothetical to the VE. See id. at 66-67.

Karlin argues that this RFC assessment was not supported by substantial evidence because the ALJ failed to include corresponding limitations in the RFC accounting for his moderate limitations in adapting or managing himself; understanding, remembering, and applying information; and concentrating, persisting, or maintaining pace.[3] Pl.'s Br. at 3. The

---

[3] Karlin does not appear to challenge the ALJ's findings that he had moderate limitations in each of these four categories. Pl.'s Br. at 3. He likewise does not challenge that the ALJ's mental RFC accounted for his moderate limitations in interacting with others. Id.; Reply Br. (Doc. No. 16) at 3.

6

Third Circuit has held, however, that the ALJ is not required to use any specific language in his or her RFC to incorporate the moderate and mild ratings of a claimant's mental limitations. Hess v. Comm'r of Soc. Sec., 931 F.3d 198, 209 (3d Cir. 2019) ("no incantations are required at steps four and five simply because a particular finding has been made at steps two and three"). Specifically, Hess held that a "simple tasks" limitation is appropriate after a finding of "moderate" difficulties in concentration, persistence, or pace if a "valid explanation" is provided by the ALJ. Id. at 211.

Here, the ALJ adequately explained how her finding of moderate limitations was accommodated in the RFC assessment limiting Karlin to unskilled work and limiting contact with others. R. at 27. In assessing Karlin's RFC, the ALJ explained that the RFC:

> [was] supported by the medical evidence, including his conservative treatment as well as his ability to live independently and care for himself. In assessing the above-defined [RFC], the undersigned has considered the claimant's moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. The undersigned has accounted for such moderate limitations by limiting the claimant to unskilled work with occasional interaction with the public, co-workers, and supervisors.

Id. at 31. The ALJ also noted that Karlin had not received any outpatient psychiatric treatment outside of his pain management doctor who prescribed him anti-depressants, but that even those records did not indicate any complaints of depression and his mental status exams were "grossly normal." Id. at 29, 30 (citing id. at 872, 922-23, 928, 940, 994).

More specifically, with respect to adapting or managing himself, the ALJ acknowledged that Karlin claimed he had difficulties handling change and managing his mood, id. at 26 (citing id. at 230, 322), but noted that Karlin was able to handle self-care and personal hygiene, care for his cats, and manage his medical treatment. Id. at 26-27 (citing id. at 224-34, 323, 331). The ALJ determined that "the objective evidence the record showed [Karlin] to have appropriate

7

grooming and hygiene, no problem getting along well with providers and staff, and normal mood and affect." Id. (citing id. at 322, 788). With respect to understanding, remembering, or applying information, the ALJ acknowledged that Karlin claimed he had difficulty remembering generally, following instructions, and completing tasks, id. at 26 (citing id. at 229), but noted that Karlin also stated that he could prepare meals, pay bills, take medications without reminders, take public transportation, and shop, id. (citing id. at 225-27, 323, 331). Karlin also stated that he was able to follow written and spoken instructions and finish tasks that he started. Id. (citing id. at 229). Moreover, the ALJ determined that the record demonstrated that Karlin was able to follow instructions from healthcare providers and his treating providers indicated that there was no change to his memory. Id. (citing id. at 733, 741, 748). Finally, with respect to his ability to concentrate, persist, and maintain pace, the ALJ found that although Karlin claimed he had limitations in concentrating, following instructions, and completing tasks, he also acknowledged that he was able to watch television, manage funds, and handle his own medical care. Id. (citing id. at 227, 229, 331). The ALJ noted that the record did not contain any mention of distractibility and consistently referenced intact concentration. Id.

The ALJ also detailed the medical opinion evidence, finding "persuasive" the opinion from the non-examining State agency psychological consultant, Francis Murphy, Ph.D., who opined that Karlin had moderate limitations in his ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace; but only mild limitations in his ability to adapt or manage oneself. Id. at 30, 76. Dr. Murphy opined that Karlin had moderate limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentrate for extended periods; and interact appropriately with the general public, supervisors, and coworkers. Id. at 81. Dr. Murphy further determined

8

that, in spite of these limitations, Karlin was capable of engaging in simple, repetitive activities on a sustained basis. Id. at 82. The ALJ indicated that these findings were consistent with the medical record revealing no outpatient psychiatric treatment other than anti-depressants from his pain management doctor, whose treatment notes indicated grossly normal mental status examinations. Id. (citing id. at 80-81, 94-95, 872, 922-23, 928, 940, 994).

The ALJ also adequately explained why she found the opinion of the psychological consultative examiner, Howard Waxman, Ph.D., who assessed more restrictive limitations, not persuasive. Id. Specifically, Dr. Waxman opined that Karlin had marked limitations in understanding, remembering, and carrying out complex instructions; the ability to make judgments on complex work-related decisions; and the ability to interact appropriately with the public, supervisors, and coworkers; and moderate limitations in understanding, remembering, and carrying out simple instructions and the ability to make judgments on simple work-related decisions. Id. at 325-26. He also determined, however, that Karlin had no limitations in his ability to concentrate, persist, or maintain pace or the ability to adapt or manage himself. Id. at 326. The ALJ found that, overall, Dr. Waxman's opinion was "not persuasive," in part because Karlin had not had any outpatient psychiatric treatment and therefore, Dr. Waxman was unable to review any of Karlin's medical records. Id. at 30; see also id. at 321. The ALJ further determined that Dr. Waxman's opinion overestimated Karlin's limitations based on a review of the entire record, which demonstrated that Karlin had the ability to schedule and maintain medical appointments, follow instructions regarding medical treatment, care for his cats, interact with his friends, and maintain his residence independently. Id. at 30.

Karlin argues, however, that the ALJ's limitation to "unskilled work" was a vocational factor, as opposed to a mental limitation, and therefore, did not adequately account for the

9

moderate limitations the ALJ assessed. Pl.'s Br. at 4-5. In support of this argument, Karlin relies on a portion of an "Appeals Council Training Guide" from 2016, which states:

> ADJUDICATION TIP:
>
> You may be tempted to state that the claimant is "able to perform unskilled work" when articulating the residual functional capacity, based on the reference to unskilled work in Social Security Ruling 85-15. However, "unskilled work" is not a mental ability. "Unskilled work" is a vocational description.

Id. Ex. A at 28. As a preliminary matter, however, courts have routinely held that internal manuals "do[] not have the force of law." Moraes v. Comm'r Soc. Sec., 645 F. App'x 182, 186 (3d Cir. 2016); Chalusian v. Comm'r Soc. Sec., 481 F. App'x 788, 791 (3d Cir. 2012) ("Internal social security manuals lack the force of law and do not bind the Social Security administration." (internal citations omitted)).[4] Nevertheless, the Social Security Administration defines "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568, 416.968. Accordingly, courts have routinely found that a limitation to "unskilled work" can be sufficient to account for moderate mental limitations. See, e.g., Weaver v. Saul, No. 18-3296, 2019 WL 4220927, at *1 n.1 (E.D. Pa. Sept. 5, 2019) (applying Hess to conclude a limitation to unskilled work was sufficient to account for a moderate limitation in concentration, persistence and pace); Starr v. Saul, No. 19-920, 2020 WL 1975080, at *17 (E.D. Pa. Apr. 4, 2020) ("Because the ALJ

---

[4] Although Karlin does not identify any cases that have addressed an "Appeals Council Training Guide," and this Court has found none, courts in this Circuit have repeatedly determined that a violation of the procedural guidance in the Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX") is not judicially enforceable. See Bordes v. Comm'r of Soc. Sec., 235 F. App'x 853, 859 (3d Cir. 2007). That principle undoubtedly applies with even more force to an "adjudication tip" provided in a training guide than it does to HALLEX, an official reference source for staff throughout the Social Security Administration. See HALLEX I-1-0-3.

10

provided a 'valid explanation' for her RFC determination, limiting Plaintiff to unskilled work with no direct interaction with the public, the ALJ adequately addressed the moderate limitation in concentration, persistence, and pace and the RFC assessment is not deficient." (quoting Hess, 931 F.3d at 212)).

Here, the ALJ adequately explained the reasoning behind her RFC limitations after having previously found moderate mental limitations in each of the four functional areas, and her determination that Karlin's moderate limitations did not warrant additional limitations in the RFC is supported by substantial evidence in the record.

### B. The ALJ's Physical RFC Was Supported by Substantial Evidence

Karlin argues that the ALJ erred in formulating his RFC by failing to account for all his physical impairments. Specifically, the ALJ found that Karlin was capable of performing sedentary work, "except [Karlin] could lift, carry, push, and pull 10 pounds occasionally and 5 pounds frequently; and sit for 6 hours and stand and/or walk for 2 hours total in an 8-hour workday. [Karlin] would need to alternate positions every thirty minutes for five minutes at the workstation and he may occasionally need to elevate his legs under his desk when in the seated position." R. at 27. Karlin argues, however, that the RFC did not account for his need to elevate his legs, his shoulder pain, or his cervical neck pain. Pl.'s Br. at 6-9. For the reasons discussed below, I find that the ALJ's physical RFC was supported by substantial evidence.

#### 1. Need to Elevate Legs

Karlin asserts that the ALJ failed to sufficiently accommodate Karlin's need to elevate his legs. Pl.'s Br. at 6-7. In support of this contention, Karlin argues that the ALJ should have adopted the opinion of Karlin's pain management specialist, Neil Anand, M.D., who opined that Karlin would need to elevate his legs "a little above waist height," a limitation that the VE

testified would preclude the ability to maintain gainful employment. Id. at 6 (citing R. at 68, 723). In formulating the RFC, however, the ALJ found that Dr. Anand's opinion was "not fully persuasive." R. at 31. With respect to Dr. Anand's opinion that Karlin would need to elevate his legs a little above his waist, the ALJ explained that Karlin's symptoms did not "correlate with [] some of the limitations given, such as [Karlin] does not have edema or any other impairment warranting the need to elevate his legs to waist height." Id.

The ALJ's decision to allow Karlin to occasionally elevate his legs under his desk when in the seated position, but not to adopt Dr. Anand's limitation that he elevate his legs above waist level, is supported by substantial evidence. Social Security regulations expressly direct an ALJ to consider both whether a physician provides evidence to support his or her opinion, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), and the extent to which the opinion is consistent with the record as a whole, id. §§ 404.1520c(c)(2), 416.920c(c)(2). Accordingly, an ALJ may decide not to credit a treating physician's opinion if the ALJ provides an adequate explanation. Sherrod v. Barnhart, No. 01-4731, 2002 WL 31429337, at *3 (E.D. Pa. Oct. 29, 2002). For example, an ALJ may reject a treating physician's opinion when it is not supported by sufficient clinical data. Newhouse, 753 F.2d at 286; see also Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 148 (3d Cir. 2007) ("A lack of evidentiary support in the medical record is a legitimate reason for excluding claimed limitations from the RFC.").

Here, Karlin's treatment with Dr. Anand spanned from November 2014 through September 2018 and consisted of over hundreds of pages of treatment records. See, e.g., R. at 407-1038. None of Dr. Anand's treatment notes, however, appear to recommend that Karlin should or needed to keep his legs elevated while seated, much less a little above waist level. See id. Instead, Dr. Anand routinely advised Karlin to perform activity as tolerated; avoid prolonged

sitting; avoid prolonged standing; avoid frequent bending, pulling, and pushing; increase rest and relaxation; and avoid lifting over 15 pounds. See, e.g., id. at 411, 420, 428-29, 435-36, 444-45, 450-51, 456, 464, 470-71, 476, 484, 490-91, 497, 504, 510, 515, 520, 526, 531, 539, 545, 550, 554, 560, 566, 572, 590, 611, 631, 651, 687, 716, 761, 799, 827, 858, 877, 917. Moreover, the internal medicine consultative examiner, Greg Grabon, M.D., did not include any leg elevation limitations when he determined that Karlin could sit, stand, and walk for two hours at one time, for a total of four hours each in an eight-hour day, and perform all postural activities frequently. Id. at 335, 337. The ALJ found Dr. Grabon's opinion "somewhat persuasive," determining that Karlin was "somewhat more limited with regard to . . . his need to change position and elevate his legs occasionally." Id. at 30. The non-examining State agency medical consultant, Louis Bonita, M.D., likewise did not include any restriction regarding the need to elevate legs, and instead opined that Karlin was capable of performing medium exertional work. Id. at 78, 92. The ALJ once again found, however, that this opinion was not persuasive as it did not account for the need to reduce Karlin's exertional capacity. Id. at 30.

Ultimately, the ALJ's RFC limiting Karlin to a range of sedentary work, which included the need to alternate positions every 30 minutes, was consistent with the recommendations repeatedly found in Dr. Anand's treatments notes. In addition, rather than entirely discount Dr. Anand's opinion regarding Karlin's need to elevate his legs, the ALJ instead provided that Karlin may occasionally need to elevate his legs under his desk when in the seated position. Id. at 27. The ALJ's decision not to adopt the additional limitation assigned by Dr. Anand that Karlin be able to elevate his legs above waist level was supported by substantial evidence in the record.

    **2.**     **Shoulder Pain**

13

Karlin also argues that the ALJ erred by failing to consider the severity of Karlin's left shoulder impairment. Pl.'s Br. at 7-8. Where an ALJ finds in a claimant's favor at step two, even if he or she erroneously concluded that some of the claimant's other impairments were non-severe, the error is harmless if the sequential evaluation process continues beyond step two and the functional limitations associated with the impairment are accounted for in the RFC. Salles, 229 F. App'x at 145 n.2 (stating that, "[b]ecause the ALJ found in [plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless" (citing Rutherford, 399 F.3d at 553)); see also Pailin v. Colvin, No. 10-4556, 2013 WL 5924972, at *2 (E.D. Pa. Nov. 5, 2013). "Error at step two is harmless when an ALJ proceeds through the subsequent steps because, when an ALJ makes an RFC determination, he [or she] must consider the combined effect of all the plaintiff's impairments, whether those impairments are severe or not-severe." Williams v. Comm'r of Soc. Sec., No. 12-5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (citing 20 C.F.R. § 404.1523); see also 20 C.F.R. §§ 404.1545, 416.945 (ALJ must consider even non-severe impairments when making an RFC assessment).

At step two of the sequential evaluation, the ALJ determined that Karlin had the following severe impairments: chronic pain syndrome, degenerative disc disease of the spine, major depressive disorder, and generalized anxiety disorder. R. at 25. Although the ALJ did not categorize Karlin's shoulder impairment as a separate, severe impairment at step two of the sequential evaluation, she thoroughly discussed the medical evidence of record regarding Karlin's shoulder throughout her RFC assessment. See id. at 27-31. The ALJ acknowledged that Karlin testified that he was unable to work due to pain in his lower back, upper left shoulder, and left leg, but also testified that he could comfortably lift and carry 10 to 15 pounds. Id. at 28,

54, 60. The ALJ noted that a left shoulder CT showed erosive arthropathy at the acromioclavicular ("AC") joint and physical exams showed a limited range in his left shoulder. Id. at 28 (citing id. at 727-28, 734, 841, 846, 903-04, 911). However, physical examinations also showed that Karlin had normal muscle strength, reflexes, and sensation. Id. During an internal medicine consultative examination, after complaining of left shoulder pain, Karlin also had "a positive Hawkin's test of the left shoulder." Id. at 29 (citing id. at 331-32). Upon physical examination, however, it was also noted that he had a normal range of motion, reflexes, sensation, and muscle strength. Id. (citing id. at 331-32). Ultimately, in explaining the RFC, the ALJ acknowledged that, while testing showed erosive arthropathy at the left AC joint, Karlin had grossly normal physical examinations and received significant improvement in his symptoms as a result of injections. Id. at 29 (citing id. at 300, 331-32, 727-28, 734, 791, 798, 846, 903-04, 965).

The ALJ also thoroughly discussed the medical opinion evidence related to Karlin's shoulder pain. The internal medicine consultative examiner, Dr. Grabon, opined that Karlin could lift up to 20 pounds occasionally and could occasionally reach overhead and frequently reach in all other directions with his left hand. Id. at 334, 336. He further concluded that Karlin could perform all postural activities, including climbing stairs, ramps, ladders, and scaffolds, balance, stoop, kneel, crouch, and crawl, frequently. Id. at 337. The ALJ, however, found that Karlin was somewhat more limited with regard to his lifting abilities, limiting him instead to lifting and carrying 10 pounds occasionally and five pounds frequently. Id. at 27. Likewise, the ALJ rejected Dr. Bonita's opinion that Karlin was capable of performing work at the medium exertional level, which would require frequent lifting and carrying of up to 25 pounds. Id. at 30; see also 20 C.F.R. §§ 404.1567(c), 416.967(c). Dr. Anand, however, opined that Karlin could

lift and carry 10 pounds occasionally and less than 10 pounds frequently, limitations that the ALJ found to be consistent with the evidence of record. R. at 31, 723. The ALJ further credited Dr. Anand's recommendations found throughout Karlin's treatment notes that he should avoid frequent bending, pulling, and pushing. Id. at 31, 842, 943. Accordingly, contrary to Karlin's argument that the ALJ did not include any limitations in the RFC to account for his shoulder impairment, the ALJ adopted the limitations regarding lifting, carrying, bending, pulling, and pushing found within Dr. Anand's medical opinion and treatment notes when she limited the RFC to lifting, carrying , pushing, and pulling only 10 pounds occasionally and five pounds frequently. Id. at 27. The RFC, therefore, adequately accounted for Karlin's shoulder pain and was supported by substantial evidence.[5]

### 3. **Cervical Neck Pain**

In his last claim, Karlin argues that the ALJ erred by failing to evaluate the severity of his cervical spine impairment and incorporate any corresponding limitations in the RFC. Pl.'s Br. at 8-9. Here, at step two of the sequential evaluation, the ALJ specifically found that Karlin suffered from the severe impairments of chronic pain syndrome and degenerative disc disease of the spine. R. at 25. Thus, while the ALJ may not have specifically differentiated a cervical spine

---

[5] To the extent Karlin argues that the ALJ erred by failing to include any restrictions related to Karlin's ability to reach in the RFC, see Pl.'s Br. at 8, his claim likewise lacks merit. The burden was on Karlin to establish the nature and degree of any functional limitations resulting from his shoulder, and other, impairments. See Hall v. Barnhart, No. 02-6918, 2006 WL 573789, at *7 (E.D. Pa. Mar. 8, 2006), rev'd and remanded on other grounds sub nom. Hall v. Comm'r of Soc. Sec., 218 F. App'x 212 (3d Cir. 2007). Indeed, in his Physical Residual Functional Capacity Questionnaire, Dr. Anand responded that Karlin had no "significant limitations with reaching, handling, or fingering." R. at 724. Moreover, Dr. Grabon likewise opined that Karlin had the ability to continuously reach with his right hand, occasionally reach overhead with his left hand, and frequently reach in other directions with his left hand. Id. at 336. Consequently, the ALJ did not err in failing to include a limitation on Karlin's ability to reach in the RFC.

impairment, the ALJ encompassed Karlin's cervical ailments within her finding that Karlin suffered from degenerative disc disease of the spine. Indeed, in determining whether Karlin had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments at step three of the sequential analysis, the ALJ identified that there was "objective medical testing showing degenerative spondylosis of the cervical spine." Id.

Moreover, to the extent the ALJ erred in not specifically identifying Karlin's cervical ailment as a severe impairment at step two, any error was harmless because the ALJ thoroughly discussed the evidence of record related to Karlin's cervical spine issues in formulating Karlin's RFC. In particular, the ALJ noted that, in August 2013, a cervical MRI showed degenerative spondylosis. Id. at 28; see also id. at 867. The ALJ noted that Karlin underwent pain management treatment from November 2014 through September 2018, during which he complained of, in part, neck pain. Id. at 28 (citing id. at 759, 850, 896, 921). Upon physical examination, Karlin demonstrated pain with rotation in his neck. Id. at 727-28, 734, 846, 903-04, 911. The ALJ noted, however, that, despite the degenerative spondylosis of the cervical spine, his primary care provider and the internal consultative examiner showed grossly normal exams. Id. at 29, 331-32, 727-28, 846, 903-04.

With respect to the medical opinion evidence, Dr. Anand opined that Karlin could only occasionally look down, rarely look up or hold his head in a static position, but frequently was able to turn his head right or left. Id. at 724. The ALJ, however, found that Dr. Anand's opinion with respect to the neck limitations was not fully persuasive. Id. at 31. The ALJ noted that "the neck limitations . . . are overstated, as there is no reported injury and treatment has been routine and conservative for the seven years of treatment." Id. The ALJ's rejection of these limitations is supported by substantial evidence. Although objective medical evidence revealed that Karlin

17

had degenerative spondylosis and he experienced abnormal findings upon physical examination, such as pain, stiffness, pain with neck flexion, and pain with left neck rotation, see, e.g., id. at 408, he also experienced significant improvement in his symptoms as a result of injections and medications, see, e.g., id. at 407 (treatment notes described that "prescribed PRN medications will improve pain by 50-75%"). Despite noting Karlin's neck pain, Dr. Anand provided no limitations with respect to neck movements in his treatment notes, instead recommending that Karlin should "perform activity as tolerated, avoid prolonged sitting, avoid prolong standing, [and] avoid frequent bending/pulling/pushing." See, e.g., id. at 420. Moreover, neither the internal medicine consultative examiner, Dr. Grabon, nor the non-examining State agency consultant, Dr. Bonita, opined that Karlin had any limitations pertaining to neck movement. See id. at 71-84, 334-39. Indeed, although Karlin speculates that the jobs identified by the ALJ would require him to sit at a desk, with his head in a relatively static position, while he performed paperwork, Pl.'s Br. at 9, Dr. Grabon opined that Karlin was able to sort, handle, and use paper/files. Id. at 339. Accordingly, the ALJ's RFC, which did not include the neck movement limitations opined by Dr. Anand, was supported by substantial evidence.

## VI. CONCLUSION

For the reasons set forth above, I find that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's Request for Review will be denied and dismissed. An appropriate order follows.

Dated: May 21, 2021

BY THE COURT:

/s/ *Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE